### FLAHERTY v. CONTINENTAL INS. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 29, 1897.)

INSURANCE—PROOFS OF LOSS—WAIVER—ESTOPPEL.
  Where the matter of a loss is referred by the insurance company to its adjuster, and he tells insured the company is not liable, and will not pay unless compelled by the courts, preliminary proof of loss is waived; the company being estopped to question his authority, notwithstanding provision of the policy that no condition thereof shall be waived except by agreement indorsed thereon.

Action by Charles Flaherty against the Continental Insurance Company.   There was judgment of nonsuit at circuit court, Livingston county, and plaintiff moves for new trial on case and exceptions directed to be heard in the first instance at the appellate division. New trial granted.

On the 23d day of August, 1893, the defendant issued a policy of insurance to the plaintiff; by the terms of which it insured him for the term of three years against loss or damage by fire to an amount not exceeding $1,500, upon his two-story frame house, celery house, barn, and contents, all situate in the town of Leicester, county of Livingston, and state of New York. The policy was of the standard form, and contained the usual provision that within 60 days after the occurrence of a fire, unless the time was extended by the defendant, the plaintiff should render a statement to the defendant, signed and sworn to by him, stating his knowledge and belief as to the time and origin of the fire, and his interest and that of all others in the property, the cash value of each item thereof, and the amount of loss thereon, and all incumbrances and other insurance, whether valid or not, covering any of the property insured. It was further stipulated that the policy was made and accepted subject to the conditions therein contained, together with such other provisions or conditions as might be indorsed thereon or added thereto. Among the conditions in subjection to which the policy was accepted was the following, viz.: "No officer, agent, or other representative of the company shall have any power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon and added hereto. And, as to such provisions or conditions, no officer, agent, or other representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or per-

mission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached." The dwelling house mentioned in the policy was unoccupied, and while vacant, and on the 11th day of August, 1894, it was totally destroyed by fire. Notice of the fire was forthwith given to the local agent of the defendant, who thereupon made a personal examination of the premises, and informed the defendant of the loss. This information was conveyed by letter, and to this letter the agent received a reply from the defendant, in which it was stated that "the matter has been referred to our adjuster, Mr. R. H. Dolson, whose address is Middletown, N. Y. If not already done, notify us and the adjuster above named probable amount of loss," etc. Shortly after the receipt of this letter, Mr. Dolson arrived at Mt. Morris, where the plaintiff resides, and had an interview with him. In the course of the negotiations for adjustment which thereupon took place between the parties, the plaintiff asked Dolson when the company would pay the loss. Dolson replied that the company had no liability in the case, for the reason that the vacancy permit was not binding. Upon receiving this information, the plaintiff stated that, if such was the case, it would have to be settled in the courts, to which Dolson replied that that was his course. Thereupon this action was brought, and no proofs of loss were furnished the defendant either before or after bringing the same.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

W. I. Van Allen, for plaintiff.
Myron H. Peck, Jr., for defendant.

ADAMS, J. By the terms of the defendant's contract of insurance, as expressed in its policy, the furnishing of proofs of loss by the plaintiff was undoubtedly a condition precedent to the latter's right to recover; and his omission to furnish the same within the prescribed time would, generally speaking, work a forfeiture of the contract. Sergent v. Insurance Co., 85 Hun, 31, 32 N. Y. Supp. 594. This requirement, however, is one which was inserted in the policy for the exclusive benefit of the defendant, and unquestionably it had the right to waive its performance. The single question, therefore, which this court is called upon to decide, is whether the evidence upon the part of the plaintiff establishes such a waiver.

It appears, and it is not disputed, that, soon after the fire, the defendant's adjuster announced to the plaintiff that the defendant would not pay the loss, upon the ground of nonliability, and this denial of liability was explicit and unqualified. If, therefore, this statement may be treated as emanating from the company itself, and not from one who represented it merely in the capacity of an agent, the denial of liability was equivalent to a declaration on the part of the defendant that it would not pay the plaintiff's loss, even if the proofs were furnished; and consequently it was tantamount to a waiver of the condition requiring such proofs to be furnished. May, Ins. pp. 573, 574; Lang v. Fire Co., 12 App. Div. 39, 42 N. Y. Supp. 539, and cases there cited. In determining, therefore, how far the defendant is bound by the declarations of Dolson, it is important to bear in mind the circumstances under which he assumed to act for, and the apparent authority with which he had been clothed by, the company. It is undisputed that he was sent by the defendant to inquire into the plaintiff's loss, with full authority to adjust the same. What does this imply? The definition of the verb "adjust" is thus given in the Century Dictionary, viz.: "To settle or bring

to a satisfactory state, so that parties will agree in the result; as to adjust accounts." And, if to adjust is to settle, an "adjuster" is, of course, a person who makes the adjustment or settlement. The defendant informed its local agent at Mt. Morris that the matter of the plaintiff's loss had been referred to its adjuster, Mr. R. H. Dolson. It would seem, therefore, that, when this gentleman reached Mt. Morris, he was accredited to this plaintiff as fully authorized and empowered to adjust and settle his loss; and, if so, it follows, by implication at least, that his authority was sufficient to enable him to take any and every step which he deemed necessary or proper to facilitate an adjustment. Had he stated to the plaintiff that he was satisfied with respect to his claim, and that, therefore, it would be unnecessary for him to furnish any proofs of loss, can it be doubted that the plaintiff would have had a right to rely upon such an assurance, and would have been justified in omitting to take any further steps to establish his claim? And, if this be so, it would seem equally clear that, when he declared that the company was not liable in any event, his declaration was binding upon the company, because, in making it, he was in fact the company; and the plaintiff had the right to so regard him, and to act accordingly.

Since the adoption of the standard policy in this state, many important questions have arisen, the decision of which has produced some apparent confusion and conflict in the law of insurance. There is, however, one rule which seems to be pretty well established, and that is that where a contract of insurance contains a provision that it shall not be changed, except by an agreement indorsed upon the policy by a duly-authorized agent or officer of the company, an agent who possesses the power of his principal, either actually or apparently, may by his conduct estop his principal from enforcing such a provision against a party who has acted in reliance upon such conduct. Messelback v. Norman, 122 N. Y. 578, 26 N. E. 34; Bishop v. Insurance Co., 130 N. Y. 488, 29 N. E. 844; Manchester v. Assurance Co., 151 N. Y. 88, 45 N. E. 381. We think that this case fairly falls within this rule, and that it may be said that the defendant is estopped from questioning the authority of its representative to waive a strict compliance with the requirements of the contract, for the reason that it sent him to the plaintiff clothed with apparent authority to take every necessary and proper step to adjust and settle his loss, and that, when the adjuster declared that the defendant would not pay anything whatever until compelled so to do by a legal adjudication, the plaintiff had a right to rely upon that assurance, as well as upon the apparent authority of the adjuster to give it; and he consequently had the right to bring his action forthwith, without first going through what, in the circumstances of the case, would have been the mere idle ceremony of furnishing proofs of loss. We conclude, therefore, that the judgment of nonsuit in this case was improperly granted, and that a new trial should be directed.

Judgment reversed, and a new trial granted, with costs to abide the event. All concur.