**RICE v. SCHILLER et al.**

No. 14334.

Court of Civil Appeals of Texas. Dallas.
June 1, 1951.

Rehearing Denied June 29, 1951.

Willis & Lewis, Curtis White, all of Dallas, for appellant.

Burford, Ryburn, Hincks & Ford and Clarence A. Guittard, all of Dallas, for appellees.

CRAMER, Justice.

This is an action under the guest statute, Art. 6701b, Vernon's Ann.Civ.St., filed by Miss Helen Bryson (now Mrs. Less Schiller) and Miss Mozelle King. The two causes were first filed separately, but thereafter consolidated and tried together.

The parties will be here designated as in the trial court. The plaintiffs sought recovery of damages for personal injuries suffered by them while riding as guests in defendant's automobile when it collided with a tree. The collision occurred about 3:00 A.M. on July 22, 1948 in the City of Dallas. The jury's answers to the 58 special issues submitted are, in substance, as follows:

(1) Defendant drove his automobile upon Turtle Creek Boulevard while under the influence of intoxicating liquor, (2) in heedless and reckless disregard of the rights of plaintiffs, (3) proximately causing their injuries.

(4) Defendant's failure to stop at the stop sign on Hall Street at intersection of Turtle Creek Boulevard was done in heedless and reckless disregard of the rights of plaintiffs, (5) proximately causing their injuries.

(6) Defendant failed to yield the right of way to an eastbound automobile on Turtle Creek Boulevard approaching Hall Street, (7) in heedless and reckless disregard of plaintiffs' rights, (8) proximately causing their injuries.

(9) Defendant was racing at the time with another car, (10) in heedless and reckless disregard of the rights of plaintiffs, (11) proximately causing their injuries.

(12) Defendant was driving at a speed exceeding 30 miles per hour, (13) in heedless and reckless disregard of the rights of plaintiffs, (14) proximately causing their injuries.

(15) Was driving at a negligent speed in approaching the intersection, (16) in heedless and reckless disregard of plaintiffs' rights, (17) proximately causing their injuries.

(18) Failed to keep a proper lookout, (19) in heedless and reckless disregard of plaintiffs' rights, (20) proximately causing their injuries.

(21) Failed to keep his automobile under control, (22) in heedless and reckless disregard of plaintiffs' rights, (23) proximately causing their injuries.

(24) Failed to apply his brakes after leaving the roadway and before running into the tree, in heedless and reckless disregard of the rights of plaintiffs, (25) proximately causing their injuries.

(26, 27) That immediately prior to the time the automobile was driven over the curb of Turtle Creek Boulevard and it sideswiped the lamp post and struck the tree adjacent thereto, plaintiffs Helen Bryson Schiller and Mozelle King were each confronted by an emergency.

(28) That defendant's failure to slow down before hitting the tree was in heedless and reckless disregard of, and (29) proximately causing, plaintiffs' injuries.

(30, 31) That defendant's failure to sound his horn to warn the other car approaching from the west that he intended to drive through the stop sign at the intersection, was in heedless and reckless disregard of plaintiffs' rights, proximately causing their injuries.

(32, 33) That the collision as to plaintiffs was not the result of an unavoidable accident.

The jury found damages for personal injuries, (34) to Helen Bryson Schiller to be $14,000; (35) to Mozelle King $17,500.

(36, 45) That Helen Bryson Schiller and Mozelle King did not act with knowledge of the danger in riding in defendant's automobile, but (37, 46) each impliedly assented to the manner in which defendant drove his automobile prior to the collision. (38, 47) Each failed to protest as to the manner in which defendant was operating the automobile, (39, 48) but such failure to protest was not in heedless and reckless disregard of their own safety, and (40, 49) the proximate cause issues were not answered in accordance with trial court's instructions.

(41, 50) That prior to the collision both plaintiffs knew and realized that Paul H. Rice was intoxicated or under the influence of intoxicating liquor, and (42, 51) each thereafter had a reasonable and fair opportunity to leave his automobile after acquiring such knowledge; but (43, 52) their failure to leave defendant's automobile was not heedless and reckless disregard of their own safety. (44, 53) Proximate cause issues not answered in accordance with trial court's conditional instruction.

(54) That immediately before the collision defendant was not acting under emergency.

(55) That defendant Paul H. Rice's driving his car over the curb, sideswiping the lamp post and striking the tree, was not solely due to his momentary inadvertence or mere inattention.

(56) That immediately prior to the collision another car on Turtle Creek Boulevard was not in the act of passing defendant's automobile. (57, 58) Negligence and proximate cause issues not answered in accordance with trial court's conditional instruction.

After the jury's answers to the special issues were returned and filed, the court sustained plaintiffs' motion for judgment, overruled all other motions, and rendered judgment for $14,000 plus interest and costs in favor of Helen Bryson Schiller and for $17,500 plus interest and costs in favor of Mozelle King, to which judgment the defendant excepted, thereafter motion for new trial was overruled, and he duly perfected this appeal.

Appellant briefs 66 points of error; appellees eleven counter points of error.

Appellant by point 1 complains of the overruling of his motion to declare a mistrial immediately after appellees' counsel, in the presence of the jury, asked Helen Bryson Schiller if a certain statement he was questioning her about had been taken by an adjuster; appellant asserting such question suggested to the jury that defendant was protected by insurance.

The record reveals that after the plaintiff Helen Bryson Schiller had been placed

upon the witness stand and examined by her attorney, defendant's attorney cross-examined her with reference to a statement she had signed; such statement being as follows: "My name is Helen Bryson, 804 8th St., Dallas, Texas. Age 25, Single. I was with Mr. Rice and his party Wed. evening July 21, 1948. We all got to Pappy's Showland about 9 o'clock Wednesday evening. I guess it was about 1 A.M. when we left Pappy's. We drank moderately at Pappy's. I don't drink much myself. I suppose I didn't have over 2 drinks all evening. We went to the Variety Club from Pappy's. I don't recall how long we stayed at the Variety Club. It wasn't too awfully long I don't think. From the Variety Club we went to Mr. Rice's office. We didn't stay there too awfully long. We left and we were going to take this girl home. I know we didn't stay at the office more than an hour. I don't know how fast we were going at the time of the accident because I had my head back against the seat. We made a left hand turn off Cedar Springs and it doesn't look like we could have been going too fast. I never did comment to Mr. Rice about his driving, telling him to slow down or anything and I don't recall hearing anybody else in the car saying anything about his driving. I don't recall another car passing us and cutting in front of us. I had my eyes closed and was resting my head on the back of the seat. I have read the above consisting of 2 pages and it is true and correct. /s/ Helen Bryson."

Plaintiff's attorney, on her redirect examination, asked her if she signed the statement and she answered "Yes." He then questioned her further as follows:

"Q. In whose handwriting is that statement? Is that in your handwriting? A. No, sir.

"Q. Where were you at the time this statement was given? A. In Parkland Hospital." Also, as follows:

"Q. Did Mr. Willis come out there and take this statement at that time? A. I don't believe he did.

"Q. Did Mr. Curtis White come out there and take it? A. No.

"Q. Did Mr. Doyle—I mean Mr. Rice come there and take it from you? A. No.

"Q. I just want you to tell me the man's name and nothing else, that's all I want to ask you. Do you know the man's name who came there and took this statement? A. No, I don't know his name.

"Q. Did he tell you he was an adjuster and investigator in this case or not?

"Mr. White: Now, Your Honor, we object to the—

"The Court: Sustained.

"Mr. White: We ask the jury be instructed not to consider it, and furthermore we desire to present a motion at this time."

The court then heard a motion to dismiss the jury and to declare a mistrial. It developed that in addition to the proceedings above, plaintiffs' attorney had theretofore told the judge that he was dissatisfied with the jury, and on the hearing stated that he had told one of the defendant's attorneys that he thought the jury was probably a defendant's jury. He contended, however, on the motion to dismiss the jury, that his reference to an adjuster was inadvertent and also that he did not think insurance had been injected into the case. It also appears from the record that the defendant's attorney, before the evidence began, had requested the court to caution plaintiffs' attorney not to mention insurance before the jury, but that the court declined to do so, because, as he stated, Mr. Ford was an experienced attorney who knew very well that it was improper to mention insurance in the presence of the jury or draw out any information in the presence of the jury about insurance.

Under such record we must sustain the point. It is plain that the question was injected into the case by the plaintiffs' attorney in the presence of the jury. In the case of Jackson v. Edmondson, Tex. Civ.App., 129 S.W.2d 369, at page 372, the only reference to insurance was that the statement was taken by "an adjuster."

The Court of Civil Appeals held such· reference harmless. The Supreme Court granted a writ on that point and the Commission of Appeals, speaking through Judge Taylor as Commissioner, opinion adopted by the Court, 136 Tex. 405, 151 S.W.2d 794, reversed the Court of Civil Appeals on another question, but held they were in agreement with the Court of Civil Appeals on other points except the one on which the writ was granted, however did not pass upon that point directly. It is also interesting to note that in 2 Words and Phrases, under "Adjuster," there are 16 references to cases where it is defined and 15 of them are in insurances cases. The one exception being Commercial Credit Co. v. Macht, 89 Ind.App. 59, 165 N.E. 766. Appellee here, prior to the time of the mention of the term "adjuster," eliminated the defendant and his attorneys as adjusters, and, by so doing, in our opinion, emphasized that he must have meant his reference was to an insurance adjuster. From our examination of the record, we cannot say there was an absence of prejudice, but to the contrary the mention of or intimation of insurance was harmful. 33 Tex.Jur. 276, sec. 171, and cases there cited. In this connection we have also examined the evidence as a whole and find that all of the issues on primary and contributory negligence are controverted issues and were questions of fact for the jury. Point 1 is sustained.

Points 2, 4, and 13 to 18 inclusive, raise questions growing out of the plaintiffs' failure on three occasions after they had an opportunity to do so, to leave the automobile of defendant after they knew defendant was intoxicated or under the influence of intoxicating liquor; and because of that knowledge and failure to leave the automobile there was error in (2) the court's overruling of appellant's motion for instructed verdict and (4) his motion for judgment based on the jury's findings to issues 41, 42, 50 and ·51, and notwithstanding the jury's findings to special issues 43, 52, 54 and 53; there was no evidence and/or no sufficient evidence to sustain the jury's answers to issues 43 and 52, and the jury's answers to such issues were against the preponderance of the evidence; further because the court should have ignored the jury's failure to answer proximate cause issues in connection with such issues; further, the court should have ignored such failure because (13) there was no evidence, (14) the evidence was insufficient, and (15) the great preponderance of the evidence was against the jury's answers to special issues 43 and 52.

We have reviewed the record and are of the opinion that the evidence is sufficient to sustain the findings of the jury to the issues here complained of and also to sustain the overruling of appellant's motion for instructed verdict and for judgment n. o. v. The evidence reflects that each occupant of the automobile had been drinking; although the extent of the effect of the liquor on the various members of the party was conflicting. The defendant himself testified that the plaintiffs had absolutely no occasion for leaving his automobile and seeking other transportation that night, and that he did not expect them to. These points are overruled.

Points 3 and 7 assert error in the trial court's failure to sustain, and in his overruling, his motion for judgment based on the jury's answers to issues 37 and 46 finding that each plaintiff impliedly assented to the manner in which the defendant drove his automobile prior to the collision. Issues 37 and 46 were a part of two identical (except as to the names of plaintiff) groups of issues in which the jury found separately (36–45) that neither plaintiff acted with knowledge of the danger in riding in defendant's automobile; (38–47) that each failed to protest as to the manner in which defendant was operating his automobile; (37–46) that each impliedly assented to the manner of its operation; (39–48) but such was not in heedless and reckless disregard of their own safety; and because of such answers, the proximate cause issues were not answered.

Such group of issues as a whole were proper as defensive negligence issues. Appellant, notwithstanding his having failed to secure findings of heedless and reck-

less disregard by plaintiffs for their own safety, seeks to have judgment in his favor on the single issues of said group, finding implied consent by plaintiffs as to the manner in which defendant operated his automobile, and is supported by a number of out of State Cases. Our Supreme Court, however in Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474, and this Court in Buick Automobile Co. v. Weaver, Tex.Civ. App., 163 S.W. 594, error ref., held that assumed risk is not a defense in automobile guest cases in Texas. The assumed risk doctrine applies only where there is a contractual relationship between the parties, —relationship of master and servant being an illustration.

Voluntary exposure to danger does not bar plaintiffs' recovery unless they were guilty of contributory negligence proximately causing their injuries. McAfee v. Travis Gas Corp. 137 Tex. 314, 153 S.W. 2d 442. These points are overruled.

Point 5 asserts error in the overruling and not sustaining of his motion to disregard and ignore the jury's findings to issues 36 and 45. The jury by these issues found that plaintiffs did not act with knowledge of the danger in riding in defendant's automobile. The rule applicable here is well stated in United Brotherhood, etc. v. Salter, 114 Colo. 513, 167 P.2d 954, Syls. 15, 16, p. 960, as follows: "It is a matter of common knowledge that, whatever may be the result in a particular case, the drinking of intoxicating liquors generally increases the likelihood of negligent driving. Voluntarily becoming the guest of a driver who has been drinking intoxicants is analogous to becoming the guest of an operator who is known to have been a negligent driver. While his use of intoxicants is an indicaton that an operator is likely to drive recklessly, it does not establish negligence as a matter of law, but is evidence sufficient to raise the issue of contributory negligence." Such case discusses numerous other cases and properly states the rule and we adopt it as our holding here. The question being one for the jury, point 5 is overruled.

Appellant's point 6 asserts there is a fatal conflict in the jury's answers to issues 36 and 45, and also in 41 and 50. They found (36, 45) that plaintiffs did not act with knowledge of the danger in riding in defendant's car, and (41, 50) plaintiffs knew of defendant's intoxication or defendant's being under the influence of intoxicating liquor. It is the duty of the court to reconcile, if possible, what may appear on first reading to be conflicting findings. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558. There was evidence to sustain the finding that defendant was under the influence of intoxicating liquor. The members of the party had all had several drinks. It does not follow that each also knew defendant was not competent to drive the automobile or that they had full knowledge of the danger of riding with him. It was necessary, before the question could become one of law and not a jury issue, that plaintiffs acted wih full knowledge that the defendant was intoxicated to the extent that they could not assume he would act as he did act at the time of the accident, and would be heedless and reckless of their safety. Under the record here there is no *legal* conflict in the issues and the point is overruled.

Appellant's 8 asserts error in the court's overruling of his motion for judgment non obstante veredicto for the reason that each plaintiff failed to exercise ordinary care for their own safety; were each grossly negligent; each assumed the risk of injury, knowing appellant was intoxicated, and by each assenting to their own hurt by continuing to ride with him after fair and reasonable opportunity to leave the car. The jury found in answer to special issues 38 and 47 plaintiffs failed to protest the manner defendant was operating his automobile, but that such failure was not gross negligence. They also found in another group of issues that before the collision plaintiffs knew and realized that defendant "was intoxicated or under the influence of intoxicating liquor," and "thereafter had a fair opportunity" to leave the automobile; but that such failure was not gross negligence. Under such rec-

ord, there being evidence raising jury issues of gross negligence, the negative finding of the jury thereon rendered immaterial the finding of failure to protest and knowledge of intoxication. McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442. Point 8 is overruled.

Points 9 to 12 inclusive assert error in the court's refusal to submit to the jury his 14 requested issues with reference to contributory negligence on part of plaintiffs. These same general acts of negligence were submitted to the jury, except that the issues submitted required the jury to find that the acts inquired about were in heedless and reckless disregard of their rights, rather than the ordinary care standard in contributory negligence issues.

It is unnecessary for us to discuss the many authorities cited by the parties, since the rule as reflected by the weight of authority in other States, and in this State, is correctly stated in 2 Restatement of the Law of Torts, pp. 1261, 1262, as follows: "(1) Except as stated in Subsection (2), a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety. (2) A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if, knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto." Aycock v. Green, Tex.Civ.App., 94 S.W.2d 894; Scott v. Gardner, Tex.Civ. App., 106 S.W.2d 1109, error dis; Wright v. Carey, Tex.Civ.App., 169 S.W.2d 749. Appellant cites 2 Baylor Law Review 76, "Contributory negligence as a defense to gross negligence," however we feel that the later cases cited above under our guest statute are based on the better reasoning and are controlling. Points 9 to 12 inclusive are overruled.

Points 19 to 63 complain that there was no evidence, that the evidence was insufficient, and that the jury's answers are against the great preponderance of the evidence and insufficient to sustain the jury's answers to issues 2 to 5 inclusive, 18 to 23 inclusive, and 36, 45, 54, 55 and 56. We have reviewed the evidence as a whole, which is voluminous, and the jury's findings on the questions raised by these points, and have come to the conclusion that such evidence raised as disputed fact issues the questions submitted to the jury, and are sufficient to sustain the jury's findings thereon. The points are therefore overruled without further discussion.

Point 64 asserts error in the definition of proximate cause. The trial court defined such term as follows: " 'Proximate cause,' as that term is used in this charge, means that cause which, in its natural and continuous sequence produces a result, and without which cause, such result would not have occurred, and which result, or some similar result, would have been reasonably foreseen by a person of ordinary care in the light of the attending circumstances. Proximate cause is not always the last cause or the cause nearest the result and, if the original act or omission complained of concurs with some new cause or agency in producing a result, the original act or omission remains a proximate cause thereof." The complaint is to that portion reading, " * * * if the original act or omission complained of concurs with some new cause or agency, * * *," for the reason that it suggests the jury ignore the testimony and look to the pleadings to determine what the plaintiffs "complained of." We do not agree with appellant. The words "complained of" did not, in our opinion, refer the jury to the pleadings but to the evidence in the negligence issue on which the proximate cause issue was based. If the definition had used the word "alleged," it would have referred to the pleadings. Too, there is no error shown for the reason that the error, if any, was harmless. Pleadings are not among the papers which may be taken by the jury to their room during their deliberations. Rule 281, Vernon's Texas Rules of Civil Procedure. The presumption is, in the absence of contrary showing, that the rule was followed and the pleadings did not go to the jury room; therefore the only matter before the jury was the evidence. Transcontinental Ins. Co. v. Green-

wood et ux, Tex.Civ.App., 90 S.W.2d 1114; Putnam Supply Co. v. Chapin, Tex.Civ. App., 45 S.W.2d 283. The point is overruled.

By point 65 appellant complains of the definition of "heedless and reckless disregard of the rights of others." The definition was: "'Heedless and reckless disregard of the rights of others,' as used in this charge, is that entire want of care which raises a belief that the act or omission complained of was the result of a conscious indifference to the rights and welfare of others to be affected by it. Such heedless and reckless disregard of the rights of others does not depend upon the actual mental state of the person whose acts or omissions are complained of, but is determined externally by his acts and conduct and the facts and circumstances in evidence before you leading up to and at the time of the accident in question. Intoxication, if any, does not lessen or reduce a person's responsibility for conduct which, if he were sober, would evince a conscious indifference to the rights and welfare of others." The point asserts that the second sentence in the definition "seems to be a contradiction in terms of the meaning of the first sentence * * *," since the second sentence states the "disregard of the rights of others *does not depend* upon the actual mental state of the person whose acts or omissions are complained of, * * *." (Underscoring ours.)

We are inclined to the opinion that the definition was not technically correct. What the jury was to find as a fact was whether or not there was a mental state of conscious indifference to the rights of others. The state of mind, or fact of "conscious indifference," whether because of evil motive or brought about by intoxicating liquor, or by any other cause under a party's control, constitutes the material fact issue. External acts and conduct of a party are to be considered by the jury together with all other facts and circumstances in the evidence relating to the question in arriving at the answer as to a conscious indifference to the rights of others. It is immaterial what brought about such a state of mind, so long as such cause which brought it about was under the control of the party charged with such state of mind. This attack on the definition is sustained. The second complaint directed to the definition involves the reference to intoxication in the definition and asserts that it is a comment on the weight of the evidence. The evidence shows the parties had been drinking. For that reason the court did not comment on the weight of the evidence when in the question he instructed the jury that "intoxication, *if any,* does not lessen or reduce a person's responsibility, * * *," etc. (Underscoring ours.) The underscored "if any," removes the objection that the use of the word "intoxication" is a comment on the weight of the evidence. The second complaint is overruled.

Point 66 raises the question as to the excessiveness of the verdict in favor of plaintiff Helen Bryson Schiller for $17,500. An examination of the record indicates that the injuries were serious and permanent; however the amount of the damages may not be the same upon a re-trial of the case and it is therefore not necessary for us to pass upon that question here. We therefore do not do so.

For the errors pointed out the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.